Good morning. We will take up the cases in the order that they appear on the docket sheet. And the first case is Figueroa v. Fasano. Good morning, Your Honors. May it please the Court, my name is Jaime Hosso and I represent the petitioner in this matter, Mr. Figueroa-Hincapie. The initial facts in this case are relatively straightforward. The petitioner is a native and citizen of Colombia. He entered the United States at the age of 8 and he is now currently 26 years of age. He is currently located in the detention facility in Lancaster, California. He fears persecution upon return, excuse me, persecution, torture and even death if returned to his country, excuse me, his native country of Colombia. The petitioner admittedly developed a drug problem at a relatively young age and ultimately was convicted in 1999 for possession and for sale of a controlled substance. As a result of that conviction, the Immigration Service at that time, referred to as the Immigration Service, initiated removal proceedings against him. Counsel, could you slow down just a little bit? More pressure with time. I realize that, but it's better to be clearly understood. Absolutely. The Immigration Service at that time initiated removal proceedings against the petitioner and the petitioner then sought the immigration relief of asylum, conviction against torture and withholding a removal. The immigration judge at that point in time terminated or, excuse me, pre-terminated the asylum application because based on the aggravated felony conviction, he is not eligible for asylum. That doesn't mean, however, that he's not eligible for withholding removal and conviction against torture. In fact, those immigration reliefs are what he has been requested for. If you want to really use your time better, though, and you're concerned about it, go straight to what's going to cause us to turn this, to decide this case. Absolutely. Thank you, Your Honor. Now, there was a finding from the BIA, and the BIA made a statement, and it said the Respondent's criminal activity posed potential harm to a small child and so forth and so on. And it talked about the circumstances. And I don't see where Figueroa challenges the ruling. Did he challenge the ruling in any way on this record? The results of the Board of Immigration Appeals application of what's called a matter of Y.L. Yeah, but did he challenge it? If he did, you tell me. Absolutely. In the district court proceedings, in the Petitioner Behaviorist Court proceedings. Where did he challenge it? He is challenging the application of matter of Y.L. before the district court. He's saying because of the change in law that occurred between his proceedings before the Board of Immigration Appeals and afterwards in his motion to reopen, he argued with the district court, in the district court, that a matter of Y.L. applies. Matter of Y.L. is not necessarily just a change of law. It actually establishes and creates a rebuttable presumption. And in doing so, he is then provided with an opportunity to rebut that presumption. Now, how would your client rebut that presumption if we were to remand? Two different points. One, if the Petitioner had actually attempted to submit additional documentation or evidence before the district court, the first thing I would have received was objections from the opposing counsel that this is a seeking review of a final order of deportation from the BIA. As such, additional facts are not to be submitted to the district court. However, if he had actually been provided with the opportunity before the BIA, there are absolutely certain facts that he wanted to distinguish his case from matter of Y.L. One, of course, is the substantial amount of narcotics that were involved with matter of Y.L. And matter of Y.L. actually involves separate cases, two of which contained narcotics convictions that included substantial amounts of grams of methamphetamines and controlled substances. However, the bottom line that the Board of Immigration Appeals said that you, to the Petitioner, you cannot overcome the burden is in reference to the harmful effect to the minor child. And what has taken place before the immigration judge, before the Board of Immigration Appeals, as well as in the brief of opposing counsel, is in reference to what has been said in reference to the harmful effect of the conviction upon a minor child. At no point in the transcripts did the Petitioner actually say the minor child was present, the minor child was present in the home, or any of that effect. What has been implied by the transcripts is that he told the girlfriend, his girlfriend at that time, don't do drugs in front of the minor child. That is the extent of what he has admitted in the immigration court proceedings. Why didn't he submit something to the Board of Immigration Appeals? The answer to that question is essentially that he did. However, it was in reference to the old law when you're dealing with matter of S.S. and matter of L.S. But nonetheless, his counsel at that time did not submit the brief in a timely fashion. So I'm wondering why. Kennedy. Excuse me. Let me interrupt you again. Did the district court do a de novo review in this case? I don't believe that it could be considered a proper de novo review. No, he didn't. And the reason he didn't do it was because your client asked him to apply in re S.S. And that's what the court did. Isn't that what happened? Isn't that what this record shows? It does.  And, in fact, the Petitioner, however, requested both things. So what are you – what does he want us to do now that we review the BIA's – we review the BIA's filing?  Is that what he thinks? Well, the court – this Court would conduct a de novo review of the actual Habeas Petition. And in the Habeas Petition, the Petitioner requested apply matter of L.S., matter of S.S. to the facts of the case. But to be quite candid with the Court, that's incorrect. At that point in time, the law was matter of Y.L. Sure. But I'm saying what he asked for and what was done. And what he asked for was to apply S.S. In addition. And the Court did, and that's why we reached it. He didn't look at Y.L. Absolutely he did, Your Honor. And I apologize for stretching on this point, but he did. In the Petition for Habeas Corpus, he mentions matter of Y.L. If matter of Y.L. applies, it creates that rebuttable presumption. And if you're going to apply the rebuttable presumption, allow him the opportunity to rebut that. You ought to say sometime yourself for rebuttal, because she's going to tell us, I think, that the Court didn't apply Y.L. I think that's what she's going to say. Well, what the district court did in reference to comparing the two laws is that they said we have matter of Y.L. on one hand. We have matter of L.S. and S.S. on the other. And what we believe it and what the district court did was provide an analysis under the old law and said, well, we agree with the government that this new law is stricter. And so since you didn't meet your burden under the old law, we're not going to apply the new law. And that, Your Honor, is absolutely incorrect. The matter of the current state of the law at the time the petition was filed was matter of Y.L. And I erred. And I'll be quite candid with you. I erred in saying in the opium brief that the Y.L. had came about pending the decision of the district court. That's not true. Matter of Y.L. was the current state of the law at the time the petition was filed. That's the state of the law that should have been applied in the case. That is the request that the Petitioner made in the district court proceedings. Counsel, I'd like to hear about the Convention against Torture. Yes. In reference to the actual merits of the claim for merits against Convention against Torture, he did request that. It doesn't make a difference in terms of the conviction at issue because it's a mandatory relief if it is shown that it is more likely than not that the Petitioner will be tortured if returned to the country of origin. In this case, he submitted documentation which established the relationship between he and his father. His father had been persecuted for several years in Colombia as a result of his membership in a particular social group as well as his involvement in training in paramilitary organizations in apparently the jungles. A letter was provided to the immigration judge confirming this as well as the fact that the difference in time that the judge was concerned about was that this occurred many years ago. And so what the Petitioner did in this case was submit documentation that in a very similar relationship between a union or a high member of a union and the son of that person, that person was ultimately killed as a result of the relationship. And so he attempted to basically establish a similar relationship between he and his father, which shared the similar relationship of being a union leader and being the son of the union leader. So as a result of which, he presented that to the immigration judge as well as the additional family members in Colombia and the concerns that she had as a result of the country reports, which indicated mass violence upon members of the population of Colombia. That being said, I'd like to take the opportunity for rebuttal time. May I sit down and have the remainder of your time for rebuttal? Good morning. May it please the Court. My name is Jacqueline Dryden, and I represent the Attorney General of the United States. This is an immigration case arising from Mr. Figueroa's appeal of the district court's denial of his petition for writ of habeas corpus. This court has already twice dismissed Mr. Figueroa's petition for review for lack of jurisdiction, presumably because he is an aggravated felon. This court should also affirm the district court's decision denying his petition for writ of habeas corpus, finding that he was convicted of a particularly serious crime. The primary issue before this court are whether the board appropriately applied the SS and LS standard to Mr. Figueroa and whether the district court properly concluded that it does not have jurisdiction over his claim under the Convention Against Torture. Mr. Figueroa, at this point, has applied at — excuse me. Mr. Figueroa is now in his sixth, not say appeal, but sixth request before four different tribunals seeking relief of his claim. Before the immigration judge, he set forth a lengthy testimony about — regarding his conviction. And the immigration judge applying the SS and LS standard found that Mr. Figueroa's crime of a drug trafficking crime relating to a controlled substance for the sale of thereby rendering him ineligible for withholding of removal. In addition, going on to the Convention Against Torture, the immigration judge analyzed that and found that Mr. Figueroa was not tortured and that his relationship with his father, his association with his father, would not lead to a conclusion that he would be tortured. And that's what we're looking for. Is association with his father? Yes. He was the son of his father. Isn't that a pretty close association? In most instances, it would be, Your Honor. But in this case, Mr. Figueroa has not lived with his father in at least since he was 8 years old. Because he's been here since he was 9, right? Well, when he came to the United States. So there's not a relationship. And his father has been in France during this period of time. So there's no relationship that others would, that people in Colombia would associate Mr. Figueroa as having any of the same opinion for which he would be tortured if he were to return there. Well, are we talking about imputed political opinion? Are we talking about the fact that he would be attacked or persecuted just by virtue of the fact that he was the son of this fairly notorious labor leader who was attacked for many, many years, 15 years, in Colombia? I don't believe Mr. Figueroa's father was attacked for a period of 15 years. I think, according to his testimony, it took place over a short period of time. It doesn't have anything to do with a political, forming a political opinion. That's not one of the elements of the Convention Against Torture. Right. So didn't the, both the immigration judge and the BIA found Figueroa to be credible, didn't they? Yes, Your Honor. All right. So how, given the testimony that he and his mother gave, how could the immigration judge not find that there was a clear probability that he would be tortured if he went back? They both testified he would be for many reasons, not just the fact he was the son of this fairly notorious labor leader, but also because he had a prior drug conviction in the United States. He talked about other reasons. And some of that evidence the IJ and BIA didn't even seem to analyze or discuss or consider. I believe that the immigration judge and the Board of Immigration and Appeals thoroughly discussed the factors regarding Convention Against Torture in light of Mr. Figueroa's claim. And they recognized that Mr. Figueroa's relatives, he claims that he is a relative of his father. The relatives that remain in Colombia have not been tortured since his and his father's departure. They, again, noted that he and his father have not had much of a relationship in the past 15 years at this point and that there would be no evidence of torture in his particular facts. What kind of relationship would be sufficient? That's really not an issue before the Court, Your Honor. Well, I'm just asking you. I mean, you're arguing that this one, son to father, is not a sufficient relationship. What does it take to be a sufficient relationship? In a hypothetical situation, I would say where the two people, the father and son, might have been doing activities together that might have formed the basis of a torture. But this is not the case on these facts. If I may turn back to the particularly serious crime analysis, the immigration judge applied SS and came to the conclusion that it was, that Mr. Figueroa's conviction was for a particularly serious crime, and the Board of Immigration Appeals upheld that decision. Mr. Figueroa then filed a motion to reopen claiming ineffective assistance of counsel with the Board of Immigration Appeals. And at this time, the Board dismissed his motion to reopen. And it also, at that point, the matter of Wael had been decided by the Attorney General. And in a bunch of caution, the Board applied the matter of Wael to Mr. Figueroa's case and came to the conclusion that his drug trafficking conviction was deemed a particularly serious crime and that Mr. Figueroa could not satisfy the six criteria to even overcome that presumption. So that was his first opportunity that Wael was applied. Mr. Figueroa then went into district court and claimed that the Board of Immigration Appeals misapplied SS and LS beforehand. And as Judge Ferris pointed out, on pages 3 and 4, Mr. Figueroa explicitly stated that Wael did not apply to the facts of his case. At best, on page 56 of the memorandum, he indicated that if the court should conclude otherwise, then a remand would be appropriate. But he provided absolutely no analysis of this. Mr. Figueroa now comes before this Court and claims that Wael applies and that it is not a higher standard, but rather it is a different standard. And as to that, I think the Attorney General was very clear that he was intending that a higher standard be applied in situations like this where there are convictions for drug trafficking crimes. He had characterized the Board's previous decisions regarding particularly serious crimes as haphazard, inconsistent, and illogical. And in the Wael decision, he stated, and I quote, it is my considered judgment that aggravated felonies involving unlawful trafficking and controlled substances presumptively constitute particularly serious crimes within the meaning of Section 241B3Bii, only under the most extenuating circumstances that are both extraordinary and compelling would departure from this interpretation be warranted or permissible. This is clearly a higher standard. And Mr. Figueroa's attempt to say that it is not a higher standard, but it's merely a different standard warranting remand for application of it to his case is inappropriate. Regarding the Convention Against Torture claim, the government submits that this is the case that the district court correctly found that it was without jurisdiction. Counsel, this is something that will be public in about a day. There is an opinion about to be filed saying that there is jurisdiction. So I just want you to be aware of that. Okay. Thank you, Your Honor. I won't belabor that point then. I will then say. It's actually going to be filed tomorrow. Tomorrow. Okay. All right. Well, then, assuming jurisdiction over this case, the government submits that the district court properly concluded that the BIA denied Mr. Figueroa's claim for protection under the Convention Against Torture for the reasons that I explained earlier. Counsel, did you write the brief? No, Your Honor. Whoever did doesn't know how to spell Columbia. I will let her know. Would you take that, Mr. Cholm? I will. I will. You know the problem, so that he can rebut. When two judges ask you a question, since somebody was giving you a free education, you ought to know that somebody on the court is concerned about the convention. And two judges did ask you questions. And so that the posture, he's going to come to rebut. I assume your position is he must show that it is more likely than not that he is going to be tortured if he is returned. The only thing he shows is that his father, who was a labor leader, was tortured and did move to Florence. I mean, to France. There's a reason that you don't know where Florence was on my mind. I'm going to Florence tomorrow. So that's what he shows. And your argument about relationship has nothing to do with the fact that he's his father's son. Your argument is he's been away from his father for so long that the acts of his father won't be attributed to him. Now, is that a correct? Yes, Your Honor. That's part of it. He needs to be clear because he's going to come to rebut. And all he hears is that he's his father, he's his son, and that relationship isn't sufficient. That's and I don't think that's what you meant. I think you meant he hasn't had the relationship with his father that would cause the acts of his father to be attributed to him. Yes. And I think I did explain that they haven't. I mean, in a given situation, there might be a relationship where. All right. I just didn't want you to read something and then say, oh, my goodness. I hope not to read something. You weren't clear enough or something, right? But anyway, thank you. You've gone over your time. And counsel, we do want to hear about why it is more likely than not that your client would be tortured upon return to Columbia. First, I can indicate to the Court that in reference to the family relationship, the family relationship was clearly sufficient in the periodical, the newspaper article that the father submitted to the IJ. What happened to his other family members? As far as I know, the extended family members have not been persecuted in Columbia. But, however, that's not to say that they share the same type of relationship, or excuse me, the same relationship of father and son. That was clearly identified in a separate situation, which was a sufficient relationship for that son to be killed. Because of the relationship between the father and son in reference to the family relationship. Can you be more specific? What was that other situation? Before the immigration judge, the Petitioner had submitted a letter from the father alleging that there was another individual in Columbia who was a high ranking official in the union group and also had a son based on that relationship was killed. And he submitted. It was based solely on the father-son relationship. That's the amount of. And the paramilitary organizations were aware of this relationship. That is correct. And in reference to supporting that letter, he submitted the actual article which confirmed it. So in reference to whether or not it would be more likely than not, he attempted to demonstrate that the relationship itself between the father and son and what the father participating in the organizations that were similarly participated by Petitioner's father, he too would be persecuted, tortured, if not killed. Is there anything in the record as to the general treatment of union members in Columbia? I believe that the Board of Immigration Appeals actually recognized the fact in the country reports that were submitted the mass violations of human rights upon union workers and labor unions. So, yes, Your Honor. Just briefly, I'm sorry. My time has expired. All right. Thank you. Thank you, Your Honor. The matter of Figueroa-Hincapié v. Pisano will be submitted. And we take up Macias-Ramos v. Schiltgen.
judges: B. Fletcher, Farris, Wardlaw